IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NIYATI P. JHAVERI,

        Plaintiff *pro se*,

v.

COMPTROLLER OF THE TREASURY
OF MARYLAND,

        Defendant.

        *     Civil Action No.: RDB 05-1159

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>MEMORANDUM OPINION</u>

    This action arises from a Complaint that Niyati P. Jhaveri ("Plaintiff" or "Jhaveri") filed *pro se* against the Comptroller of the Treasury of Maryland ("Defendant" or "the Comptroller"). Plaintiff alleges that the Defendant subjected her to discrimination and retaliation under 42 U.S.C. §§ 2000e, *et. seq.* and age discrimination under 29 U.S.C. §621, *et. seq.*[1] She claims that this discrimination arose from her race (Asian Pacific Islander), color, religion (Hindu), sex, age, and national origin (India). Pending before this Court is the Defendant's Motion for Summary Judgment, filed on February 10, 2006. Defendant argues that summary judgment is merited under Rule 56 of the Federal Rules of Civil Procedure because Plaintiff has failed to exhaust her administrative remedies as to the color, sex, and age claims, and because she cannot establish a *prima facie* case of discrimination as to race, religion, national origin, or retaliation. Although Plaintiff has not responded to the Motion for Summary Judgment, she attached documents to her

---

[1] Plaintiff has not clarified under which sections of the Civil Rights Act or Age Discrimination in Employment Act she claims a cause of action. Her complaint form leaves this section blank. (Pl.'s Compl. 2.)

Complaint that the Court has considered.  In addition, Defendant deposed the Plaintiff during

discovery.[2]  The Court has reviewed the deposition transcript and the parties' submissions, and

no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the following reasons,

Defendant's Motion for Summary Judgment is GRANTED.

BACKGROUND

This Court reviews the facts of the case in the light most favorable to the non-moving

party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  On

July 27, 2001, Jhaveri began working as a Comptroller Network Specialist Trainee for the

Comptroller of Maryland's Revenue Administration, Data Support Unit ("the Unit").   (Pl. Dep.

30; Zarnoch Aff. ¶ 5.)  The Revenue Administration Division processes all Maryland tax returns

and filings.  (Reger Aff.  ¶ 3.)  Seven months after hiring Jhaveri, the Unit promoted her to

Computer Network Specialist II.  (Zarnoch Aff. ¶ 5.)  Three others in the Unit held the same

position:  Carol Griffith (a white female), Frank Guinita (a white male), and Tondelayo

Timmons (an African-American male).  (Reger Aff. ¶ 4.)  A fourth employee, Niti Bakshi, an

Asian Pacific Islander of Indian descent, held a similar position until she resigned on June 17,

2003.  (*Id*.)  All employees held the same job classification and pay grade.  (Reger Aff. ¶ 5.)

Plaintiff claims that the Defendant provided her with sub-standard equipment and access

to technology that undermined her job performance.  (*See generally* Pl. Dep. 79-92, 199-203.)

She reports that the Unit changed her network profile in February 2003 so that she had fewer

---

[2]Discovery for this case ended on January 11, 2006, with automatic disclosures (per Fed.
R. Civ. P. 26(a)(1)) due by October 31, 2005.  On December 27, 2005, Defendant notified the
Court that it had not received Plaintiff's automatic disclosures, and submitted a Motion for
Appropriate Relief, asking the Court to bar Plaintiff from presenting the testimony of witnesses
not disclosed.  The Court granted this Motion on December 29, 2005.

computer privileges.  (Pl. Ex. 1 at 26, Letter from Jhaveri to Ms. Jeanette Thomas, EEO

Administrator, Comptroller of Maryland (hereafter "Thomas Letter."))[3]  While her coworker,

Mr. Guinita, had software installed on his home computer, she did not have this software and

relied on a slow laptop that the Unit provided.  (*Id*.)  According to Plaintiff, the Unit denied her

requests for a new computer and software, while her coworkers had image software that allowed

them to watch movies on their computers.  (*Id*. at 27.)

Plaintiff claims that she notified her manager, Jane Reger, of her limited computer

privileges in April or May 2003.  (Pl. Dep. 84.)  Ms. Reger recalls learning of the issue in

October 2003.  (Reger Aff. ¶ 8.)  In response, Ms. Reger contacted the Information Technology

Division ("ITD") regarding Network Specialist privileges.  (Reger Aff. ¶ 8.)  ITD reported that

Plaintiff lacked one common privilege, but had a duplicative privilege (with a different name)

that allowed her to perform the same functions.  (*See* Reger Aff., Ex. II.)  Still, Ms. Reger asked

that Plaintiff receive the missing privilege, and ITD corrected the problem in early November

2003.  (Reger Aff. ¶ 8, and Ex. II.)  When Plaintiff complained that she still lacked the IBM

Director application, Ms. Reger determined that only Mr. Guinita, the most senior employee, had

this privilege.  (Reger Aff. ¶ 10.)  Ms. Reger then extended this privilege to Plaintiff and the

other two employees, Mr. Timmons, and Ms. Griffith.  (Reger Aff. ¶ 10, Ex. IV and V.)

Although the Defendant's email documentation and computer logs show that Plaintiff received

these privileges, Plaintiff claims that ITD never restored these privileges nor granted her access

---

[3]Along with her Complaint, Plaintiff has submitted copies of email exchanges and
informal complaints that she submitted to her supervisors.  Although the Court cannot consider
these documents as evidence offered in opposition to Defendant's Motion for Summary
Judgment, it will look generously on them to support Plaintiff's brief Complaint.

to additional ones.  (Reger Aff. ¶ 10, Ex. IV and V; Pl. Dep. 84, 88, 96.)

Next, Plaintiff alleges that Defendant discriminated against her by denying her leave to attend a religious festival in April 2003.  (Pl. Dep. 204-08.)  In April 2002, Plaintiff requested and received leave to attend a Hindu religious festival in New Jersey.  (Pl. Dep. 206; Pl. Ex. 1 at 44, Letter from Jhaveri to Mr. James Arnie, June 20, 2003 (hereafter "Arnie Letter."))  The festival fell on a "Super Saturday" in April, a day on which no employees typically receive leave because of the extra work required to process tax files.  (Reger Aff.  ¶ 15.)  Management granted this request because it was Plaintiff's first year of employment but advised her not to request leave in future years.  (Reger Aff. ¶ 15; Pl. Ex. 1 at 44, Arnie Letter.)  Plaintiff recalls requesting leave in 2003, although no record of this request exists.  (Pl. Dep. 207.)  Ms. Reger states that Plaintiff did not request leave, but that managers would have denied any such request, just as they would deny leave to a Christian who asked to attend an Easter celebration on "Super Saturday."  (Reger Aff. ¶ 15.)

As further proof of discrimination, Plaintiff contends that after she requested leave, Ms. Reger required her to open mail and perform check reconciliation for several days, interfering with her regular work.  (Pl. Ex. 1 at 44, Arnie Letter.)  She viewed these assignments as retaliation for her request to attend the religious festival.  (*Id*. at 45.)  Further, Plaintiff states that her coworker, Mr. Timmons, did not work on a Super Saturday in April 2003.  (Pl. Dep. 208.)  In response, the Defendant has produced an email confirming that Mr. Timmons did work the two Super Saturdays that month.  (Reger Aff. ¶ 15; Ex. X., Email from Melissa Nowell to Jane Reger, Dec. 5, 2005.)

Plaintiff further alleges that she worked eight out of ten state holidays, disproportionately

more than her coworkers.  (Pl. Ex. 1 at 24, Thomas Letter.)  She also claims that the Defendant

discriminated against her by requiring her to work Thanksgiving Day on consecutive years, in

2002 and 2003.  (Pl. Dep. 151-60.)  In response, the Defendant points to the "on call" schedule,

which shows that Plaintiff was on call for three of eleven state holidays in 2003-2004, including

Thanksgiving and the day following.  (Reger Aff. ¶ 13 and Ex. VIII.)  Her three coworkers

covered the remaining eight holidays.  (*Id.*)

　　　In alleging general discrimination and unfair treatment, Plaintiff says that Ms. Reger

reprimanded her for leaving early while others arrived late without consequence.  (Pl. Ex. 1 at

47, Arnie Letter.)  Ms. Reger responds that she was unaware of employees arriving late, and

reprimanded them when Plaintiff raised the issue.  (Reger Aff. ¶ 14.)  Plaintiff also says she

received criticism for not performing a weekend computer "purge," although her coworkers

freely neglected the same tasks, and that Ms. Reger forced Plaintiff to open mail by herself while

her coworkers worked in teams and watched movies on their computers.  (Pl. Ex. 1 at 46, 48,

Arnie Letter.)  When Plaintiff asked to manage a computer imaging process, Ms. Reger instead

chose Mr. Guinita.  Although Plaintiff attributes this decision to favoritism, Ms. Reger says she

chose Mr. Guinita for his seniority.  (Pl. Ex. 1 at 49, Arnie Letter.)

　　　Regarding her coworkers, Plaintiff alleges that they threw floppy disks and banged books

and doors to annoy her.  (Pl. Ex. 1 at 27, Thomas Letter.)  She also alleges that her coworkers

pushed their desks so that her desk shifted, injuring her knees.  (Pl. Dep. 61-64.)  Plaintiff asked

her manager at the time, Colleen Donahue, to speak with Mr. Timmons about the "pushing,"

after which the actions stopped for a while and then resumed.  (Pl. Dep. 62, 64.)  Plaintiff further

provides evidence that a coworker started and/or shut down her computer after she left for the

day.  (Pl. Ex. 1 at 31, System Log of Mar. 12, 2003.)  In response, her coworkers say they shut

down her computer for network safety, and that all computers must be shut down each evening.

(Pl. Ex. 1 at 30-32, Email from Tondelayo Timmons to Jhaveri, Mar. 13, 2003.)  Finally,

Plaintiff claims that because of these problems she suffered chest pain, sleep disruption, weight

loss, and anemia, as well as emotional distress.  (Pl. Dep. 228-230.)

     In March 2003, Plaintiff informed her supervisors of the alleged discriminatory

treatment.  (Pl. Ex. 1 at 6, EEOC Notice of Charge of Discrimination.)  She filed an informal

complaint with the Comptroller's Office in September 2003 and a formal complaint with the

EEOC in May 2004.  (Pl. Compl. 3.)  Plaintiff reports that her work environment became more

hostile following these complaints, and that she requested transfer to another department as a

result.  (Pl. Ex. 1 at 6, EEOC Notice of Charge of Discrimination.)  On January 31, 2005, the

EEOC closed its file on the charge, stating that it was "unable to conclude that the information

obtained establishes violation of the statutes."  (Pl. Ex. 1 at 7, EEOC Dismissal and Notice of

Rights.)

     In June 2004, Plaintiff voluntarily sought and obtained employment with another State of

Maryland agency, the Department of Juvenile Services.  (Zarnoch Aff. ¶ 3; Pl. Dep. 203.)  She

retained the same position (Computer Network Specialist II) and pay grade (17) at her new job.

(*Id.*)  Plaintiff asserts that she had no choice but to transfer given the unfair treatment she

received, and that the transfer limited her opportunities for promotion and disqualified her from a

tuition reimbursement program.  (Pl. Compl. 3-4; Pl. Dep. 234-36, 244-45.)  The Unit did not

replace Plaintiff's vacated position, but transferred the position to the Central Payroll Bureau

within the Comptroller's Office.  (Zarnoch Aff. ¶ 4.)  A white female subsequently filled the

transferred position, and the Unit later hired an African-American female to fill a different vacant position.  (*Id.*)

<u>STANDARD OF REVIEW</u>

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

In undertaking this inquiry, a court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  The opponent, however, must present evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The Fourth Circuit has stated that "[o]nce the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact."  *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47

(4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir.

1999)).  Rule 56(e) also requires that "affidavits submitted by the party defending against a

summary-judgment motion contain specific facts, admissible in evidence, from an affiant

competent to testify, 'showing that there is a genuine issue for trial.'"  *Id.* (quoting 10B Charles

Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740, 399 (3d ed. 1998)).  A

mere "scintilla" of evidence supporting the nonmoving party's case will not preclude summary

judgment.  *Anderson*, 477 U.S. at 252.

This Court has held previously that a "party cannot create a genuine dispute of material

fact through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d

373, 375 (D. Md. 2001) (citations omitted).  Indeed, this Court has an affirmative obligation to

prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d

774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th

Cir. 1987)).

<u>DISCUSSION</u>

**A.  Failure to Exhaust Administrative Remedies**

To successfully seek judicial relief, a plaintiff must first exhaust her administrative

remedies as to each claim of discrimination under Title VII.  *See* 42 U.S.C. § 2000e-5(b).  As the

Fourth Circuit has held, "[i]t is axiomatic that a claimant under Title VII must exhaust his

administrative remedies by raising his claim before the EEOC."  *Sloop v. Memorial Mission*

*Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999), citing *Dennis v. County of Fairfax*, 55 F.3d 151,

156 (4th Cir. 1995) ("Where ... claims raised under Title VII exceed the scope of the EEOC

charge and any charges that would naturally have arisen from an investigation thereof, they are

procedurally barred.").  In *Sloop*, the court barred the plaintiff from raising a Title VII retaliation

claim when the administrative charges only alleged age discrimination.  *Sloop*, 198 F.3d at 149.

More recently, the Fourth Circuit has affirmed that "plaintiff's claim generally will be barred if

his charge alleges discrimination on one basis – such as race – and he introduces another basis in

formal litigation – such as sex."  *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

Here, Jhaveri's EEOC complaint of May 2004 alleged discrimination based on race,

religion, national origin, and retaliation.[4]  (Pl. Ex. 1 , EEOC Notice of Charge of Discrimination,

May 7, 2004.)  In January 2005, the EEOC responded to this complaint and addressed each of

these four claims, issuing a dismissal and release to sue letter on January 31, 2005.  (Pl. Ex. 1 at

7, EEOC Dismissal and Notice of Rights.)  Plaintiff's Complaint adds to these allegations with

two new bases for discrimination:  sex and age.  (Pl. Compl. at 2.)  Because she has not raised

these claims before the EEOC, Plaintiff has failed to exhaust her administrative remedies as to

sex and age.  *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (noting that

failure to exhaust administrative remedies deprives a federal court of subject matter jurisdiction

under Fed. R. Civ. P. 12(b)(1)); *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166

F.3d 642, 647 (4th Cir. 1999) (holding that the plaintiff bears the burden of proving that subject

matter jurisdiction properly exists in the federal court).  Here, Plaintiff has not met this burden.

Therefore, the Court shall dismiss Plaintiff's sex and age claims for lack of subject matter

---

[4]A February 2004 complaint to the EEOC, which is attached to Plaintiff's complaint,
included "color" as a basis for discrimination.  (*See* Pl. Ex. 1 at 5, EEOC Notice of Charge of
Discrimination, Feb. 24, 2004.)  It is not clear if Plaintiff ever filed this complaint. Still, because
she may have filed this complaint, and because the EEOC may have considered color in its
investigation of Plaintiff's race and national origin claims, the Court will assume that Plaintiff
has exhausted her administrative remedies as to color.

jurisdiction.

## B.  Discrimination Under Title VII

To defeat a motion for summary judgment on her Title VII claims, Plaintiff bears the burden of establishing a *prima facie* case of discrimination. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005).  Under the "McDonnell Douglas test," Plaintiff must establish four elements of discrimination: (1) she belongs to a protected class; (2) she suffered an adverse employment action; (3) at the time of the action, she met her employer's legitimate performance expectations; (4) her employer filled her position with a similarly qualified applicant outside the protected class.  *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003), *cert. denied*, 540 U.S. 1973 (2003); *Brinkly v. Harbour Rec. Club*, 180 F.3d 598, 607 (4th Cir. 1999).

Plaintiff can establish elements (1) and (3), but not elements (2) and (4) of the *McDonnell Douglas* test.  As an Asian Pacific Islander, Plaintiff belongs to a protected class.  She also met her employer's performance expectations at the time of the alleged discrimination.  (Def. Mot. Summ. J. 17.)  To establish that she suffered an adverse employment action, however, Plaintiff must show that the challenged actions "adversely affected the terms, conditions, or benefits of [her] employment."  *Newman v. Giant Food, Inc.*, 187 F.Supp. 2d 524, 528 (D. Md. 2002) (citations omitted), *aff'd sub. nom, Skipper v. Giant Food, Inc.*, No. 02-1319, 2003 WL 21350730 (4th Cir. June 11, 2003).  The Defendant urges the Court to look to Maryland state law to define "disciplinary" or adverse employment actions.  *See* Md. Ann. Code, State Personnel and Pensions, § 11-104.  The Maryland Code lists various disciplinary actions an employer may take against an employee, including issuing a written reprimand, suspending an employee without

10

pay, denying the employee an annual pay increase, demoting the employee, or terminating the employee's job.  *Id.*  An affidavit from the Director of Personnel for the Office of the Comptroller, Jeanne Zarnoch, reports that Plaintiff suffered none of these actions.  (Zarnoch Aff. ¶¶ 2, 5.)  The Court, however, does not find this argument dispositive, and also looks to relevant case law to define "adverse employment action."

Within the Fourth Circuit, analyses of possible adverse employment actions typically focus on employer actions relevant to hiring, granting leave, discharging, promoting, or compensating an employee.  *Amirmokri v. Abraham*, No. AW-05-1717, 2006 WL 1889921, at *6 (D. Md. May 9, 2006) (citing *Von Gunten v. Maryland*, 243 F.3d 858, 863 (4th Cir. 2001)).  In *Amirmokri*, the plaintiff alleged that a dearth of meaningful work assignments constituted an adverse employment action.  *Amirmokri*, 2006 WL 1889921, at *7.  This Court held that such action was not adverse because the assigned duties were consistent with the employee's job level, he retained his usual job responsibilities, and the employer did not relegate him to a "dead-end position."  *Id.* (citing *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) ("The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action."))  This Court also held in *Amirmokri* that a letter of reprimand did not constitute an adverse employment action, absent a showing by the plaintiff that the letter affected the terms and conditions of his employment or his opportunities for advancement.  *Id.* (citing *Newman*, 187 F.Supp. 2d at 528-29).  In *Newman*, this Court held that a verbal or written warning against arriving late to work, absent evidence that the warning could lead to further disciplinary action such as termination, did not constitute an adverse employment action.  *Newman*, 187 F. Supp. 2d at 528-29.

Here, Plaintiff asserts that her supervisors reprimanded her for leaving early, deprived her of necessary technology, and required her to open mail when she had more technical work to complete.  Plaintiff further asserts that these actions compromised her ability to perform well, thus limiting her upward mobility in the Unit.  The Defendant has rebutted these claims by showing that managers reprimanded all employees who kept irregular hours, and that the technology department responded to Plaintiff's request for more software.  Moreover, beyond her bare assertions, Plaintiff presents no evidence that the alleged unfair treatment affected the terms and conditions of her employment.  As the Director of Personnel confirms, Plaintiff's written reprimand did not end in further disciplinary action.  (Zarnoch Aff. . ¶¶ 2, 5).  Although she found some of the work unpleasant, Plaintiff continued to perform work appropriate for her grade level.  Therefore, she cannot prove a *prima facie* case of employment discrimination on this claim.

Even assuming that Defendant's denial of Plaintiff's request for leave to attend a Hindu religious festival in April 2003 constitutes an adverse employment action, Plaintiff's claim still fails.  The Defendant has presented a legitimate, nondiscriminatory reason for its decision.  *See Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (holding that once a plaintiff makes a claim of adverse treatment, "[t]he burden . . . shifts to the defendant . . . to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason.")  Specifically, Ms. Reger's affidavit confirms that management does not allow any employee to take leave during April "Super Saturdays," and that the Unit informed Plaintiff of this commitment when she began work.  (Reger Aff. ¶ 15.)  Further, although Plaintiff alleges that another employee took leave on

a Super Saturday, the Defendant confirms that he worked that day.  (Reger ¶ 15; Ex. X., Email from Melissa Nowell to Jane Reger, Dec. 5, 2005.)  Therefore, the Defendant has met its burden by providing a legitimate, non-discriminatory reason for the challenged action.

Once the employer offers this neutral reason, the burden reverts to the plaintiff to prove that the claimed non-discriminatory reason is a pretext for intentional discrimination.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097 (2000).  If the plaintiff provides sufficient evidence of pretext, then the employer's discrimination become a triable issue for the finder of fact.  *Id*. at 148.  Here, however, Plaintiff has provided no evidence to support a pretext claim beyond her own assertions.  *See Mann v. First Union National Bank*, No. 05-1449, 2006 WL 1676397, at *5 (4th Cir. June 13, 2006) (citing *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (noting that a plaintiff's "own naked opinion, without more," is not enough to establish discrimination)).

Finally, although Plaintiff does not raise a claim of constructive discharge, her Complaint and deposition can be read to allege this charge.  Her Complaint requests "past and future wages/salary, promotion" and "past and future training."  (Pl. Compl. 3-4.)  In contemplating how the alleged discrimination impacted her career, Plaintiff responded, "[B]ecause I had to leave.  I was so frustrated of working against me over there. . . If I were not discriminated, if I were not treated so badly, poorly, unfairly, I would not have left comptroller's office."  (Pl. Dep. 234, 244-45.)  As discussed below, however, Plaintiff provides insufficient evidence to support a claim of constructive discharge.

A plaintiff may establish constructive discharge by showing that his employer "deliberately made [his] working conditions intolerable in an effort to induce [him] to quit."

*Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (quoting *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001) (internal quotation marks omitted)).   Therefore, Plaintiff must show that (1) her employer's actions were intentional; and (2) a reasonable person would find the resulting work conditions intolerable.   *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186-87 (4th Cir. 2004); *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir.1997).   "However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."   *Heiko*, 434 F.3d at 262 (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 378 (4th Cir. 2004) (internal quotation marks and alterations omitted)).

In *Heiko*, the Fourth Circuit held that an employer had not deliberately forced the plaintiff to leave, partly because the employee himself had initiated his own departure by choosing to relocate to another department.   *Heiko*, 434 F.3d at 262.   Although the employer asked the plaintiff to engage in some menial tasks, these tasks were not inappropriate for his position.   *Id*.   Further, his salary remained commensurate with his position and responsibilities. *Id*.   To address the plaintiff's concerns, his employer had allowed him to transfer within the company and take on different positions more to his liking.   *See id*. at 262-63.

Here, Plaintiff initiated her own transfer and maintained the same grade and pay level. Rather than force her out, her employer addressed her concerns by making sure she had the appropriate software, asking her coworkers to stop moving their desks, and allowing her to miss work on a "Super Saturday" in 2002.   In an email to Plaintiff, her supervisor, Carol Griffith, shows some effort toward resolving these problems:   "I am getting tired of stepping on your toes.

14

. . please try to work with us and give the benefit that we are trying to act as a unit." (Pl. Ex. 1 at 33, Email from Carol Griffith to Jhaveri, Mar. 14, 2003.) As in *Heiko*, the Defendant did not force Plaintiff into a dead-end position or require her to perform tasks beneath her grade level. Neither can Plaintiff prove that her new position is inferior to her prior job; when pressed for proof that she has lost access to a tuition reimbursement program because of the job transfer, Plaintiff replies, "I am assuming, okay. I could be wrong. I don't know." (Pl. Dep. 236-37.) Therefore, Plaintiff cannot rely on a constructive discharge claim or on the alleged inferiority of her new position to prove that she suffered an adverse employment action under Title VII.

## C.  Hostile Work Environment

Plaintiff's Complaint also seems to allege a hostile work environment. She states that she was "many times harassed, retaliated, hostiled [sic] work environment, unfair treatment, unequal opportunities." (Pl. Compl. at 2.) To establish a *prima facie* case of a racially hostile work environment, Plaintiff must demonstrate that: "(1) the harassment was unwelcome; (2) the harassment was based on [her] race  . . . ; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Causey v. Balog,* 162 F.3d 795, 801 (4th Cir. 1998). As explained below, Plaintiff's claim fails because, based on the undisputed material facts, she cannot show that the perceived harassment was based on her race, color, religion, or national origin, or that the harassment was sufficiently severe or pervasive to alter the conditions of her employment.

      i.    <u>Harassment Based on Race, Color, Religion, or National Origin</u>

First, Plaintiff provides no evidence to link the claimed harassment to her race, color, religion, or national origin.  She claims she received criticism for leaving early while her employer let others arrive late; however, one of the late-arriving employees was Niti Bakshi, another Asian Pacific Islander of Indian descent.  (Pl. Dep. 116.)  Yet Plaintiff alleges in her deposition that others treated her poorly "[b]ecause I was the only Indian."  (Pl. Dep. 108.)  In an exchange from Plaintiff's deposition, she alleges no specific evidence linking the harassment to the above factors:

> Q:  Why was that discrimination?
>
> A:  Because I was Hindu, because I was –
>
> Q:  But why –
>
> A:  – Indian.
>
> Q:  Did anyone say to you "We're" –
>
> A:  Nobody is going to say –
>
> Q:  – "not supposed" –
>
> A:  Nobody is going to say that intentionally to make it themselves looking bad.

(Pl. Dep. 75-76.)

This case presents similar facts to *Mann*, where a plaintiff claimed gender discrimination after her employer did not consult her in a hiring decision and excluded her from a sales meeting, and a coworker commented that she was "a nosey busy body."  *Mann*, 2006 WL 1676397, at *5. The Fourth Circuit concluded that these incidents did not contravene Title VII because "other

than Mann's bare assertions," there was no evidence that her employer took these actions because of Mann's gender.  *Id.* (citing *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (noting that a plaintiff's "own naked opinion, without more, is not enough to establish a *prima facie* case" of discrimination)).  Similarly, Plaintiff cannot link the alleged harassment to her race, color, religion, or national origin, and thus fails the second prong of the test outlined in *Causey,* 162 F.3d at 801.

ii.     Severe or Pervasive Harassment

Furthermore, Plaintiff does not establish that the alleged conduct was sufficiently "pervasive" to create a hostile work environment under Title VII.  To determine pervasiveness, the Fourth Circuit looks to the following five factors:  "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work performance; and (5) what psychological harm, if any, resulted."  *Conner v. Schrader-Bridgeport Intern., Inc.*, 227 F.3d 179, 193 (4th Cir. 2000).  In applying these factors, this Court has recognized that "[t]he standard for proving an abusive work environment is intended to be a very high one," *Jackson v. State of Maryland*, 171 F. Supp. 2d 532, 542 (D. Md. 2001), because the standard aims to "filter out complaints attacking the ordinary tribulations of the workplace . . . ." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (internal citation omitted).

A violation of Title VII under the hostile work environment theory requires that the "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . .'" *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir.

17

2000) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (citation omitted)).  Here,

Jhaveri claims that her coworkers bothered her by making noise, pushing their desks, excluding

her from an office lunch, and shutting down her computer after she left the office.  (Pl. Ex. 1 at

31, System Log of Mar. 12, 2003.)  Plaintiff provides no evidence, however, that her coworkers

intentionally made noise or pushed their desks to harass her, and her supervisor confirms that

others shut down her computer per office policies.  (Pl. Ex. I at 30-32, Email from Tondelayo

Timmons to Jhaveri, Mar. 13, 2003.)  Moreover, Plaintiff presents no evidence of physical injury

and does not allege that she felt physically threatened.  In her affidavit, Ms. Reger reports that

Plaintiff's open work area allowed noise to travel freely, but that Ms. Reger was in the area

numerous times and never heard excessive noise.  (Reger Aff. ¶ 12.)

In *Mann*, the Fourth Circuit concluded that a coworker's rude comment and exclusion

from a meeting did not constitute "severe or pervasive conduct" under Title VII.  *Mann*, 2006

WL 1676397, at *5.  Even assuming that Plaintiff's coworkers did make excessive noise or

pushed their desks to intimidate or insult Plaintiff, these sporadic annoyances do not constitute

the frequent and severe harassment that constitute an "abusive work environment" under Title

VII.

Similarly, Plaintiff claims that her supervisors verbally reprimanded her in front of

others.  (Pl. Dep. 108-09; Pl. Ex. 1 at 47, Letter from Jhaveri to James Arnie, June 20, 2003).

Again, the Court views these occasional altercations as "ordinary tribulations" of the workplace

rather than frequent and severe abuse.  *See Faragher*, 524 U.S. at 788.  Moreover, although

Plaintiff claims that the alleged harassment interfered with her regular work and caused health

problems, she provides no evidence of missed work, negative evaluations, or medical diagnoses

18

that confirm these claims.

Finally, these claims fail the fourth prong of the test outlined in *Causey*, as no basis exists for imputing the employees' actions to the Defendant. *See Causey*, 162 F.3d at 801.  Indeed, Plaintiff's supervisors addressed her concerns by asking employees not to move their desks and by specifically inviting Plaintiff to a celebratory lunch.  (Pl. Ex. 1 at 33-34, Email Exchange Between Carol Griffith and Jhaveri, Mar. 14, 2003.)  For these reasons, Plaintiff has failed to establish a *prima facie* case of a hostile work environment based on race, color, religion, or national origin.

### D.  Retaliation Claim Under Title VII

Plaintiff also claims that the Defendant retaliated against her for complaining to the EEOC.  (Pl. Compl. at 2.)  Section 704(a) of Title VII prohibits an employer from taking an adverse employment action against an employee "because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" related to an employment practice that Title VII prohibits.  Title VII § 704(a), 42 U.S.C. § 2000e-3(a).  The Supreme Court has recently addressed claims of retaliation under Title VII.  *See Burlington No. and Santa Fe Railway Co. v. White*, 126 S.Ct. 2405 (2006).

Initially, to establish a *prima facie* case of retaliation, a plaintiff must show that:  (1) the employee engaged in protected activity; (2) the employer took an adverse employment action against the employee; and (3) the activity caused the adverse action.  *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 242 (4th Cir. 1997); *Anderson v. G.D.C.*, Inc., 281 F.3d 452, 458 (4th Cir. 2002).  Plaintiff engaged in a protected activity by filing informal and formal EEOC complaints in September 2003 and May 2004.  Although this Court has already determined that

Plaintiff cannot raise a genuine issue of material fact as to adverse employment action under the *McDonnell Douglas* test, which establishes whether Plaintiff can assert a *prima facie* case of discrimination, the Supreme Court has recently expanded the class of actions that may constitute "adverse action" under Title VII's retaliation provision.  Specifically, *Burlington* held that a plaintiff need not show "an adverse effect on the 'terms, conditions, or benefits' of employment" to support a retaliation claim.  *Burlington*, 126 S.Ct. at 2410 (quoting *Von Gunton v. Maryland*, 243 F.3d 858, 866 (4th Cir. 2001)).  Rather, a court may find retaliation if the plaintiff shows that a reasonable employee would have the found the challenged action "materially adverse," or likely to "dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*. at 2415 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

Although there may be a genuine issue of material fact under the more generous *Burlington* standard, Plaintiff fails to prove causation, which remains a necessary third prong of the retaliation test.  *See Munday*, 126 F.3d at 242.  Plaintiff does not provide any evidence that her employer's behavior changed after she filed the EEOC complaints.  Rather, her Complaint, supporting documents, and Deposition focus on activities from 2002 and early to mid-2003 – months before she filed her first complaint in September 2003.  In *Mann*, a plaintiff claimed that her employer assigned her less prestigious work after she complained of gender discrimination. *Mann*, 2006 WL 1676397, at *5.  The Fourth Circuit held that the plaintiff could not establish causation because the employer assigned the more menial work three to four months before her complaint.  *Id*. (citing *Thompson v. Potomac Elec. Power Co*., 312 F.3d 645, 651 (4th Cir. 2002) ("The district court rightly found that the continuation of the alleged averse action after the filing of a discrimination complaint did not, without more, support Thompson's *prima facie* burden of

showing causation.")).  Here, Plaintiff does not provide any evidence (beyond her allegations) that the Defendant treated her differently following her EEOC complaints.

Moreover, even the Supreme Court's *Burlington* decision affirmed that the new standard for retaliation applies only to claims of material adversity, not to trivial harms.  *Burlington*, 126 S.Ct. at 2415.  Filing a claim of discrimination "cannot immunize [an] employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  *Id*. (citing 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed. 1996) (commenting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and coworkers" are not actionable under Title VII's anti-retaliation provision)).  Here, there is no genuine issue of material fact with respect to any evidence of material adversity, even under the broader standard of *Burlington*.  Therefore, given Plaintiff's failure to show both causation and adverse treatment, the Court grants summary judgment to the Defendant on the retaliation claim.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's claims of sex and age discrimination are DISMISSED.  Judgment shall be entered in favor of Defendant and against Plaintiff on all remaining claims.  A separate Order will follow.

Dated:  August 7, 2006                                    /s/_____

Richard D. Bennett
United States District Judge